UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| In re: | ) | Case No. 05-24905 |
|---|---|---|
| JANNIE R. PAGE,<br>    Debtor. | )<br>)<br>) | Chapter 7 |
| MARVIN A. SICHERMAN,<br>CHAPTER 7 TRUSTEE,<br>    Plaintiff, | )<br>)<br>) | Adversary Proceeding No. 05-1699<br><br>Judge Arthur I. Harris |
| v. | ) | |
| JANNIE R. PAGE, *et al.*,<br>    Defendants. | )<br>) | |

MEMORANDUM OF OPINION

The above-captioned adversary proceeding is currently before the Court on the first amended complaint of the Chapter 7 trustee, Marvin A. Sicherman. The trustee seeks (1) a determination as to the validity, priority, and amount of liens, claims, and other interests in property; (2) the marshaling of liens and claims to property; and (3) authority to sell a co-owner's interest in property. In lieu of a trial, the plaintiff trustee and defendants have agreed to have the matter resolved on stipulations filed with the Court. In addition, the parties have narrowed the disputed claims down to the issue of whether the trustee is entitled to an order requiring Steel Valley Federal Credit Union to satisfy its secured claim first from certificates of deposit in the name of defendant Willie L. Page, spouse of

debtor-defendant Jannie R. Page, before foreclosing on real properly held jointly by Willie and Jannie Page. For the reasons that follow, the Court resolves this disputed issue against the trustee and in favor of the defendants and otherwise enters judgment as the parties have stipulated.

## JURISDICTION

The parties are in agreement that the trustee's claims are core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(A), (K), (N) and (O). The Court has jurisdiction over core proceedings under 28 U.S.C. §§ 1334 and 157(a) and Local General Order No. 84, entered on July 16, 1984, by the United States District Court for the Northern District of Ohio.

## STIPULATION OF FACTS

On July 25, 2006, the parties agreed to file stipulations of fact in lieu of trial. Stipulations were filed on September 12, 2006. Those stipulations which are relevant to the issues before the Court are as follows:

1. Plaintiff, Marvin A. Sicherman, is the trustee (the trustee) in the bankruptcy case of Jannie R. Page, the debtor herein (the debtor), which case was commenced by the filing of a voluntary petition for relief under Chapter 7 of the

Bankruptcy Code on September 20, 2005.[1]

2. Defendant, Willie L. Page, Jr. (Mr. Page), is the debtor's spouse. Mr. Page is not a debtor in the bankruptcy case.

3. As of the commencement of bankruptcy case, the debtor and Mr. Page jointly owned real property located at 13411 Argus Avenue, Cleveland, Ohio, and more fully described as follows:

> Situated in the City of Cleveland, County of Cuyahoga and State of Ohio, and known as being Sublot No. 74 in the Helper-Cody Realty Company's Bratenahl Allotment of part of Original 100 Acre Lot No. 351, as shown by the recorded Plat in Volume 54 of Maps, Page 1 of Cuyahoga County Records, as appears by said plat, be the same more or less, but subject to all legal highways.

The parties attached a copy of the deed to the stipulations as Exhibit A.

4. The Cuyahoga County Auditor's value of the Real Property, for the tax year 2005, was $63,800.00.

5. The debtor's interest in the real property is property of the bankruptcy estate pursuant to 11 U.S.C. § 541.

6. Defendant, James Rokakis, as Treasurer of Cuyahoga County (the

---

[1] This bankruptcy case was filed prior to October 17, 2005, the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109-8, 119 Stat. 23 (BAPCPA). Therefore, all references to the Bankruptcy Code are to the Bankruptcy Code as it existed prior to the effective date of BAPCPA.

3

treasurer), has a first and best lien on the real property for real property taxes and assessments. All taxes and assessments presently due to the treasurer, as relates to the real property, have been paid and are current.

7. On December 15, 1999, the debtor and Mr. Page began borrowing funds from defendant, Steel Valley Federal Credit Union (Steel Valley), and signed and delivered to Steel Valley an Open-End Home Equity Credit Agreement and Truth in Lending Disclosure (the credit agreement). The parties attached a copy of the credit agreement to the stipulations as Exhibit B. As of the present date, the debtor and Mr. Page jointly owe the sum of $9,095.78 to Steel Valley, which obligation is governed by the credit agreement.

8. On December 15, 1999, to secure their monetary obligation evidenced by the credit agreement, the debtor and Mr. Page signed and delivered an open-end mortgage on the real property to Steel Valley, which was recorded in Cuyahoga County on March 3, 2000 (the Steel Valley Mortgage). The parties attached a copy of the Steel Valley mortgage to the stipulations as Exhibit C. The Steel Valley Mortgage[2] is junior to the lien of the Treasurer and senior in priority to a

---

[2] Although Stipulation #9, filed by the parties, merely states, "[t]he Steel Valley Mortgage, if determined to be valid and enforceable, is junior to the lien of the [t]reasurer and senior in priority to a lien of [d]efendant, Dollar Bank," the validity of the lien was established through answers to the amended complaint.

4

lien of defendant, Dollar Bank, FSB, as described below. The present balance due on the Steel Valley Mortgage is $9,095.78.

9. On July 23, 2002, the debtor and Mr. Page granted a second mortgage on the real property to defendant, Dollar Bank, FSB (Dollar Bank), which was recorded in Cuyahoga County on July 30, 2002 (the Dollar Bank Mortgage). The parties attached a copy of the Dollar Bank mortgage to the stipulations as Exhibit D. Dollar Bank presently has a valid and enforceable mortgage on the real property, junior to the liens of the treasurer and Steel Valley, with a balance due thereon in a sum not less than $18,474.42 plus interest accruing at the rate of $16.27 per diem from and after March 9, 2006.

10. Mr. Page owns two certificates of deposit, designated as Certificate Numbers 899 and 981 in Account No. 46461 (the CD's), on deposit with Steel Valley. Mr. Page opened the CD's in 2004. The CD's are governed by Steel Valley's membership and account agreement. The parties attached a copy of the Steel Valley membership and account agreement to the stipulations as Exhibit E. As of the present date, there is $19,751.05 on deposit in the CD's. The CD's were completely funded with Mr. Page's social security and pension funds.

11. The real property, if sold, will be the only asset administered by the trustee in the bankruptcy case, and will be the only asset of the bankruptcy estate.

5

12. Partition in kind of the real property between the bankruptcy estate and Mr. Page, as owner of the real property, is impracticable.

13. The trustee asserts that a sale of the bankruptcy estate's interest in the real property would realize significantly less for the estate than the sale of such property free of the interests of Mr. Page, as a co-owner. While Steel Valley does not dispute this assertion, the debtor and Mr. Page do. In support of his contention, the trustee submitted an affidavit averring that the sale of the estate's interest would realize significantly less than sale of the property free of Mr. Page's interest.

14. If the real property is sold, the trustee would be required to pay Mr. Page his share of the proceeds of the real property. Because the proceeds would be split between Mr. Page and the trustee, the trustee's affidavit states the benefit to the estate would outweigh the detriment to the co-owner.

15. The real property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

## DISCUSSION

*Count I: Determination of the Validity, Priority, and Amounts of Liens*

Count I of the trustee's amended complaint seeks a determination of the

6

validity, priority, and amount of liens, claims, and interests in and to the real and personal property. By way of agreed orders, stipulations, and answers to the complaint, the parties have agreed that the following liens exist against the real property located as 13411 Argus Avenue, Cleveland, Ohio:

> 1. The treasurer holds the first valid lien on the property for taxes and assessments in an amount to be later determined.
>
> 2. Steel Valley holds a second valid lien on the property in the amount of $9,095.78, less any unapplied payments or credits made to Steel Valley after August 30, 2006.
>
> 3. Dollar Bank holds a third valid lien on the property in the amount of $18,474.42, plus interest at the rate of $16.27 per diem from and after March 9, 2006, less any unapplied payments or credits made to Dollar Bank during and after the commencement of this proceeding.
>
> 4. Mr. Page holds a valid interest in one-half of the remaining proceeds.

Additionally, the parties have stipulated that the debtor has no interest in the personal property of Mr. Page's CD's on deposit at Steel Valley.

*Count II: Marshaling of Liens*

Count II of the trustee's amended complaint seeks a court order applying the doctrine of marshaling and requiring Steel Valley to satisfy the debt owed to it by the debtor and Mr. Page from CD's held entirely by Mr. Page. For the reasons that follow, the Court enters judgment against the trustee and in favor of the defendants in Count II.

7

"The doctrine of marshaling of assets is an equitable doctrine which the bankruptcy courts may apply . . . for the benefit of a junior creditor, who may lose its opportunity for repayment if a senior creditor is permitted to first exhaust a doubly charged fund." 3 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy,* ¶ 544.07 (15th Ed. Rev.). *See generally* Restatement (Third) of Property: Mortgages § 8.6 (1997). Section 544(a) of the Bankruptcy Code gives the bankruptcy trustee the rights of a lien creditor, thereby enabling the trustee to pursue marshaling. *See* 11 U.S.C. § 544(a); *See also In re Wilmot Mining Company*, 167 B.R. 806, 811 (Bankr. W.D. Pa. 1994) *citing In re C & B Oil Co.*, 72 B.R. 228, 229-30 (Bankr. N.D. Ohio 1987). Because the doctrine of marshaling assets involves the nature and effect of liens, the laws of the state in which the property is located control. *See C & B Oil*, 72 B.R. at 230. Accordingly, the Court will apply Ohio law regarding the marshaling of liens.

Under Ohio law, the doctrine of marshaling:

"is a familiar one in equity, growing out of the equitable principle that a party having two funds to satisfy his demands shall not, by his election, disappoint a party who has only one of the funds upon which to rely, thus preventing him from exercising his right of recourse against the property or assets in question in an unreasonable manner or so as to satisfy his claim to the exclusion of such other claimants. Thus if a senior creditor has a lien on two different parcels of land, and a junior creditor has a lien on only one of such parcels and the prior creditor elects to take his whole demand out of the parcel of land on which they both have liens, the junior creditor is

8

entitled either to have the senior creditor thrown upon the other fund or to have the prior lien assigned to him for his benefit."

*C & B Oil*, 72 B.R. at 230 *quoting Homan v. Michles*, 118 Ohio App. 289, 291, 194 N.E.2d 162, 164 (Ohio Ct. App. 1963).

> Marshaling is an equitable accommodation to the junior interest holders. As such, it is applicable only when its operation will be equitable. It is a general guide to the courts, not an absolute rule. Thus, marshaling is not applied when it would be detrimental to the foreclosing mortgagee, or when its application would be unfair for other reasons.

Restatement (Third) of Property: Mortgages § 8.6 (1997); *See also Homan*, 118 Ohio App. at 291 (marshaling is only to be exercised when it "will work no injustice to any party connected with the litigation"). Three elements are required for a court to order the marshaling of assets:

1. That [the creditors] are creditors of the *same* debtor;

2. That there are two funds belonging to *that* debtor, and

3. That one of them alone has right to resort to both funds.

*Peoples Bank of Tuscaloosa v. Computer Room, Inc.* (*In re Computer Room*), 24 B.R. 732, 734 (Bankr. N.D. Ala. 1982) (emphasis added); *see also Homan*, 118 Ohio App. at 291 (requiring both creditors to be creditors of the same debtor and the source of funds be derived from that common debtor). Ohio courts have interpreted these three elements to form the "common debtor" rule. *See C & B Oil*,

9

72 B.R. at 230, *citing Homan*, 118 Ohio App. at 290.

The "common debtor" rule requires that "all the parties seeking aid must be creditors of the same common debtor." *C&B Oil*, 72 B.R. at 230. In applying the "common debtor" rule, a bankruptcy court following Ohio law refused to order relief where the cosigner on a debt was not a common debtor to the junior creditor seeking the benefit of marshaling. *See C&B Oil*, 72 B.R. at 230. In *C & B Oil*, the corporation obtained a loan from Sylvania Savings Bank. Robert Bartholomew, president of C & B Oil, signed the promissory note for the debt both in his individual capacity and as an officer of the corporation. Carol Bartholomew, secretary of C & B Oil, also signed the note in her individual capacity. The loan with Sylvania Savings Bank was secured both by corporate assets of C & B Oil and by the personal assets of the Bartholomews. When C & B Oil filed bankruptcy, the Chapter 7 trustee sought an order requiring the marshaling of assets. Specifically, the trustee wanted Sylvania Savings Bank to be required to satisfy the loan by first foreclosing on the personal assets of the Bartholomews, thereby leaving the corporate assets for the benefit of unsecured creditors. Applying the "common debtor" rule, the court denied the trustee's request because the Bartholomews, though officers of the corporation and cosigners on the loan, were separate entities from C & B Oil, therefore there was

10

no common debtor. *See C&B Oil*, 72 B.R. at 231. *Accord Homan,* 118 Ohio App. at 290 (applying the "common debtor" rule to deny marshaling of assets where junior creditor sought to require senior creditor to satisfy its obligation first from the assets of a cosigner). In denying the junior creditor's request, the *Homan* court stated:

> [c]ases throughout the United States seem to be in full accord that a junior creditor of a common debtor cannot, under the guise of the doctrine of marshaling assets, require a senior creditor, who is additionally secured by the common debtor's surety, to resort first to the surety's property before having recourse to the property of the principal debtor.

*Homan,* 118 Ohio App. at 291.

In his brief, the trustee cites *Merrigan v. Small Business Administration (In re Clary House, Inc.)*, 11 B.R. 462 (Bankr. W.D. Mo. 1981), to support his contention that the junior creditor may, through the doctrine of marshaling, require the senior creditor to satisfy the obligation from the debts of a cosigner. "*Clary House* is an anomaly which has not been followed by any other court and is at odds with" the common debtor rule as applied by the Kentucky courts. *UPS Capital Bus. Credit v. C.R. Cable Constr., Inc.,* 181 S.W.3d 44, 48 (Ky. Ct. App. 2005). Unlike *Clary House,* the majority of courts have not "recognized [a] surety-guaranty distinction in the application of the marshaling doctrine because these assets are not owned by a *common debtor of both creditors*." *In re*

11

05-01699-aih    Doc 50    FILED 10/20/06    ENTERED 10/20/06 14:47:48    Page 11 of 15

*Computer Room*, 24 B.R. at 734. Accordingly, "because the debtor does not hold the funds which are in the hands of the surety or guarantor . . . , [the surety's assets] are not assets subject to marshaling." *UPS Capital Bus. Credit*, 181 S.W.3d at 48.

In the present case, the trustee seeks a court order applying the doctrine of marshaling and requiring Steel Valley to satisfy the debt owed to it by the debtor and Mr. Page from CD's held entirely by Mr. Page. Mr. Page is not a debtor in the bankruptcy case, and therefore is not a common debtor to both Steel Valley and the trustee as lien creditor. Under Ohio law, the trustee, as junior creditor to Mrs. Page, is not entitled to an order that Steel Valley satisfy the debt owed to it first from the assets of Mr. Page. Accordingly, the Court enters judgment against the trustee and in favor of the defendants in Count II.[3]

## Count III: Turnover of Personal Property

Count III of the trustee's amended complaint seeks turn over of one-half of the funds on deposit with Steel Valley Federal Credit Union. In his brief, the trustee moves this Court to dismiss Count III because the parties have stipulated that the debtor did not have an interest in the funds. Accordingly, Count III is

---

[3] The Court finds it unnecessary to address the Pages' alternative arguments that Steel Valley is not entitled to set-off the certificates of deposit.

dismissed without prejudice.

*Count IV: Authorization to Sell Non-Debtor Spouse's Interest in Real Property*

Count IV of the trustee's amended complaint seeks an order authorizing the trustee to sell both the bankruptcy estate's interest in the property located at 13411 Argus Avenue, Cleveland, Ohio, and the interest of Willie L. Page, Jr., as co-owner. For the reasons that follow, judgment on Count IV is entered in favor of the trustee and against the defendants.

Section 363(h) of the Bankruptcy Code provides that:

> the trustee may sell both the estate's interest . . . and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, and undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if —
>
> > (1) partition in kind of such property among the estate and such co-owners is impracticable;
> >
> > (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interest of such co-owners;
> >
> > (3) the benefit to the estate of a sale of such property free of the interest of co-owners outweighs the detriment, if any to such co-owners; and
> >
> > (4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

The trustee has the burden of establishing all four elements required under

13

§ 363(h). *See Kovacs v. Sargent* (*In re Sargent*), 337 B.R. 661, 666 (Bankr. N.D. Ohio 2006).

The parties have stipulated that partition in kind of the property located at 13411 Argus Avenue, Cleveland, Ohio, is impracticable and that the property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power. In their stipulations, the defendants dispute the second and third requirements for a sale under § 363(h); however, the defendants did not address these issues in their brief. In fact, the defendants' brief states "Count II of the [t]rustee's [a]mended [c]omplaint addresses the only remaining issue in this adversary proceeding." The Court concludes that the debtor and co-owner are no longer contesting the sale of both interests in the property under § 363(h). Therefore, the trustee has authority to sell both the bankruptcy estate's interest in the property located at 13411 Argus Avenue, Cleveland, Ohio, and the interest of Willie L. Page, Jr., as co-owner. However, under § 363(i), Mr. Page retains his right of first refusal and may purchase the property "at the price at which such sale is to be consummated" by the trustee. 11 U.S.C. § 363(i). Accordingly, judgment on Count IV is entered in favor of the trustee and against the defendants.

## CONCLUSION

For the reasons stated above, judgment in Count I is as follows

1. James Rokakis, Cuyahoga County Treasurer, holds the first valid lien on the property for taxes and assessments in an amount to be later determined.

2. Steel Valley Federal Credit Union holds a second valid lien on the property in the amount of $9,095.78, less any unapplied payments or credits made to Steel Valley after August 30, 2006.

3. Dollar Bank, FSB holds a third valid lien on the property in the amount of $18,474.42, plus interest at the rate of $16.27 per diem from and after March 9, 2006, less any unapplied payments or credits made to Dollar Bank during and after the commencement of this proceeding.

4. Willie L. Page holds a valid interest in one-half of the remaining proceeds.

Judgment on Count II is entered against the trustee and in favor of the defendants, Count III is dismissed without prejudice, and judgment on Count IV is entered in favor of the trustee.

IT IS SO ORDERED.

---
Arthur I. Harris
United States Bankruptcy Judge